# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                  **Case No. 06-CR-209**

**KING SMITH**
        **Defendant.**

---

## SENTENCING MEMORANDUM

The government charged defendant King Smith with possession of cocaine base with intent to deliver, 21 U.S.C. § 841(a)(1) & (b)(1)(C), and possessing a firearm as a felon, 18 U.S.C. § 922(g). Defendant pleaded guilty to both charges, and I ordered the probation office to prepare a pre-sentence report ("PSR"). On the drug count, the PSR set a base offense level of 24 under U.S.S.G. § 2D1.1(c)(8), then added 2 levels under § 2D1.1(b)(1) based on defendant's possession of a firearm. On the firearm count, the PSR set a base level of 20 under U.S.S.G. § 2K2.1(a)(4)(1), then added 4 under § 2K2.1(b)(6) because defendant possessed the gun in connection with another felony offense, to wit crack distribution. The PSR then grouped the counts under § 3D1.2(c) and subtracted 3 levels for acceptance of responsibility under § 3E1.1, producing a final offense level of 23. Coupled with a criminal history category of VI, the PSR recommended an imprisonment range of 92-115 months under the advisory sentencing guidelines.

Defendant objected to the enhancements under § 2D1.1(b)(1) and § 2K2.1(b)(6), and argued that two of his prior convictions were "related" and thus should score just once under § 4A1.2. Defendant further requested a non-guideline sentence of 48 months under 18 U.S.C.

§ 3553(a) to account for the disparity created by the guidelines' treatment of 1 gram of crack the same as 100 grams of powder cocaine.  I rejected defendant's guideline objections but, upon consideration of all of the factors under § 3553(a), elected to impose a sentence a bit below the advisory range.  I provide written reasons herein.

## I.  SENTENCING PROCEDURE

Post-Booker, a district court must engage in a two-part sentencing procedure: (1) properly calculate the guidelines, resolving any disputes necessary to that calculation; and (2) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence.  United States v. Holt, No. 05-4286, 2007 U.S. App. LEXIS 11331, at *16 (7th Cir. May 15, 2007) (citing United States v. Dean, 414 F.3d 725, 727 (7th Cir. 2005)).

## II.  DISCUSSION

**A.      Guideline Calculations**

**1.       U.S.S.G. § 2D1.1(b)(1) Enhancement**

Defendant objected to the 2-level enhancement for firearm possession under U.S.S.G. § 2D1.1(b)(1).  Application note 3 explains that the enhancement for weapon possession

> reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1 cmt. n.3.  The Seventh Circuit holds that under this provision the government must first prove by a preponderance of the evidence that the defendant possessed the gun. If it does so, the burden shifts to the defendant to show that it was clearly improbable that the weapon was connected to the offense.  United States v. Bothun, 424 F.3d 582, 586 (7th Cir.

2

2005).

In the present case, the officers found a loaded handgun under the mattress in a bedroom in which they also found crack cocaine inside a shoe box in the closet. They also found a digital scale on a shelf in the same bedroom closet. Guns found in close proximity to drug activity are presumptively connected to that activity, United States v. Corral, 324 F.3d 866, 873 (7th Cir. 2003), and based on the location of the weapon and the drugs in this case, the government met its burden. See also United States v. Noble, 246 F.3d 946, 954 (7th Cir. 2001) (affirming enhancement where gun was found in same room as drug proceeds); United States v. Franklin, 896 F.2d 1063, 1065-66 (7th Cir. 1990). Relying on cases from other circuits, defendant argued that the government must show a nexus between the gun and the drug offense, or a relationship between the firearm and the offense, but the Seventh Circuit has held "that there is no need for proof of a nexus between the weapon and the crime; it is enough that it was possessed at the time of the offense." United States v. Banks, 987 F.2d 463, 467 (7th Cir. 1993).

Thus, the burden shifted to defendant to show that it was clearly improbable that the gun was connected to the offense. He relied primarily on his own post-arrest statement that he bought the gun to protect his family. Under all of the circumstances, this was insufficient. Defendant admitted that he had been selling cocaine from the house, and officers found video cameras and monitors at the house, which were most likely installed to protect defendant's drug distribution business. It was therefore logical to assume that the gun was also possessed, at least in part, to protect his drug supply and paraphernalia. To the extent that defendant's family needed protection, surely defendant's drug trafficking activity in the house increased their risk. Defendant noted that there was no evidence that he used the gun to protect his

3

drugs or that he possessed it during any particular transaction, but this misunderstood the burden. Once the government demonstrates possession, it is the defendant who must show that the gun is not connected to the offense. Defendant failed to do so here. Therefore, I overruled this objection.

### 2.    U.S.S.G. § 2K2.1(b)(6) Enhancement

Defendant also objected to the 4-level enhancement under U.S.S.G. § 2K2.1(b)(6), which applies if a felon possesses "any firearm or ammunition in connection with another felony offense." In this case, the PSR applied the enhancement because defendant possessed the pistol in connection with his drug trafficking offense. Before addressing this objection, I noted that because the two counts of conviction were grouped under § 3D1.2(c), resolution of the objection did not affect the final guideline. Nevertheless, for the sake of completeness, I ruled on the issue.

Application note 14(A) explains that for this enhancement to apply, the firearm must facilitate, or have the potential of facilitating, another felony offense. U.S.S.G. § 2K2.1 cmt. n.14(A). The standard for imposing this enhancement is somewhat different, and higher, than under § 2D1.1(b)(1). See, e.g., United States v. Holt, No. 06-CR-108, 2007 WL 580574, at *1 n.1 (E.D. Wis. Feb. 21, 2007). Nevertheless, application note 14(B) explains that the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." In that situation, the Commission assumes that the presence of the firearm has the potential to facilitate the offense. U.S.S.G. § 2K2.1 cmt. n.14(B).

Defendant argued against the enhancement because the government did not show a nexus between the gun and the offense, but I found that the enhancement applied. Given the

4

proximity of the gun to the drugs, it clearly had the potential to facilitate defendant's drug offense. See United States v. LePage, 477 F.3d 485, 489 (7th Cir. 2007) ("[W]hen the guns are possessed along with the materials of a drug trafficker, it is a reasonable inference that the guns protect or embolden the criminal enterprise."). As indicated above, the evidence demonstrated that defendant dealt out of his house and had other security precautions such as video monitors. Therefore, it was a reasonable inference that the gun protected or emboldened his criminal activity. Accordingly, I overruled this objection.

### 3. "Related" Prior Offenses

Defendant's final objection was to the separate counting of his prior possession with intent to deliver and bail jumping offenses, which he claimed were consolidated for sentencing. Defendant was sentenced in both cases to 18 months imprisonment, to run concurrently.

Under U.S.S.G. § 4A1.2(a)(2), prior sentences imposed in "related cases are to be treated as one sentence." Application note 3 explains that prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing. U.S.S.G. § 4A1.2 cmt. n.3. Under section (C), sentences are considered consolidated when there is a formal order consolidating them, or if the defendant can show "functional consolidation." United States v. Graves, 418 F.3d 739, 744-45 (7th Cir. 2005). Functional consolidation occurs when there is a record that shows the sentencing court considered the cases sufficiently related for consolidation and effectively entered one sentence for multiple convictions. United States v. Vallejo, 373 F.3d 855, 858 (7th Cir. 2004).

5

Defendant's argument failed because an arrest separated these two offenses. He was arrested on the drug case on March 31, 2001, released on bail, then committed the bail jumping case when he failed to appear in court in July 2001.

Even if the objection did not fail for that reason, defendant failed to show consolidation. There was no formal order of consolidation, so he had to show functional consolidation. In that regard, he noted that he was sentenced on both cases on the same day and the sentences ran concurrently. However, this alone is insufficient. Graves, 418 F.3d at 745. Further, even though defendant was sentenced on both cases on the same day, and received concurrent sentences, the cases had separate docket numbers and separate sentencing orders. See Vallejo, 373 F.3d at 859 (finding sentences not consolidated when each case had a different docket number, the judge referred to the cases as separate, and sentencing orders were entered separately); United States v. Best, 250 F.3d 1084, 1095 (7th Cir. 2001) (affirming district court's decision on consolidation when the sentencing court retained separate docket numbers, entered separate judgments and sentences, and the crimes occurred one month apart and were not logically related). Therefore, I overruled this objection as well.[1]

## B.    Section 3553(a)

In imposing sentence, the court must consider all of the factors set forth in § 3553(a), which include:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[1]Defendant suggested that the 18 month sentence on the bail jumping case was high for such an offense, and that the court imposed the sentence simply to match what it imposed on the drug offense. However, defendant failed to provide a copy of the sentencing transcript, and I was unable to speculate as to the sentencing court's reasons for doing what it did.

6

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (a)(2).

### 1.    Nature of Offense

Police obtained a search warrant for defendant's house based on an informant's purchase of $20 of crack there. Inside, officers located a loaded .25 caliber pistol, 4.17 grams of crack cocaine and a digital scale. They also found video cameras and monitors. Defendant stated that he bought the pistol on the street to protect his family and bought the rocks earlier that day for $85. He said that he sold drugs to help support his family.

### 2.    Defendant's Character and Background

Defendant was forty-eight years old and had a record going back nearly thirty years,

7

including convictions for armed robbery, theft, retail theft, possession of a controlled substance, receiving stolen property, obstructing an officer, carrying a concealed weapon, possession with intent to deliver and bail jumping. He was on extended supervision for the latter two cases when he committed the instant offenses.

Defendant married in 2001 and had two children with his wife, ages nine and seven. Defendant's relationship with his wife had been strained, but they were living to together in Milwaukee and apparently trying to work things about prior to his arrest. However, after his arrest she moved back to Tennessee. Nevertheless, she stated that defendant was a good family man. Defendant had six other children with another woman, and one of his daughters made positive statements about him to the PSR writer.

Defendant had some health problems resulting from a 1985 beating, which left him with head injuries, and had been on social security disability since that time. He appeared to have a problem with crack use and had not received treatment. He dropped out of high school and had not earned his GED or HSED.

### 3. Guidelines

The guidelines called for a term of 92-115 months. Defendant requested a sentence below that range based primarily on the guidelines' treatment of 1 gram of crack the same as 100 grams of powder cocaine. He cited the Sentencing Commission's reports critical of the disparity and noted that if he had possessed powder, his range would have been 30-37 months on the drug count.

In a series of reports, the Sentencing Commission has indicated that the 100:1 ratio is unjustified and contrary to the sentencing objectives contained in § 3553(a). See United States v. Pickett, 475 F.3d 1347, 1353-54 (D.C. Cir. 2007) (citing the Commission's 2002 report);

8

United States Sentencing Commission, <u>Cocaine and Federal Sentencing Policy</u> (May 2007); see also <u>United States v. Leroy</u>, 373 F. Supp. 2d 887, 891-92 (E.D. Wis. 2005) (noting, based on Commission reports, that (1) the prevalence of aggravating factors in crack cases does not differ substantially from powder cocaine cases; (2) any pharmacological differences between crack and powder do not justify the disparity in penalties; (3) in comparison to the mid-80s, the use of crack has decreased; (4) the harsh crack penalties disproportionately impact on black defendants and have increased racial disparity in federal sentencing; (5) the disparity in sentences involving crack and powder brings irrationality into the criminal justice system, allowing guideline sentences to vary widely depending on whether the offender had cooked the powder into crack by the time of arrest; and (6) the 100:1 ratio results in lesser sentences for large scale suppliers of powder cocaine than the street level crack dealers who exist below them in the hierarchy of distribution). In fact, the Commission recently proposed reducing crack sentences by 2 levels across the board. <u>See</u> United States Sentencing Commission, <u>Amendments to the Sentencing Guidelines</u> 66-67 (May 11, 2007).

The guidelines are no more binding in crack cases than in any other kind of case. However, the Seventh Circuit has held that post-<u>Booker</u> district courts may not reject the 100:1 ratio and substitute their own. Instead, they must "refract" the problems with the ratio through the individual defendant's case. <u>United States v. Jointer</u>, 457 F.3d 682, 687 (7th Cir. 2006); see <u>United States v. Willis</u>, 479 F. Supp. 2d 927, 936 (E.D. Wis. 2007). Some of those concerns were present in this case, although not all. I reviewed them through the prism of defendant's case.

First, defendant appeared to be a low level street dealer, who dealt for very little profit. He possessed a small amount of crack, which he purchased for just $85. If the substance he

9

possessed had been powder, he would have fallen in the lowest category recognized by §

2D1.1(c), which is reserved for those responsible for less than 25 grams, and calls for an

offense level of 12, rather than the level 24 defendant faced.  Thus, imposition of a guideline

sentence in this case would have produced the anomalous result of a retail crack dealer

receiving a longer sentence than the wholesale drug distributors who supply the powder

cocaine from which the crack is produced.  The Commission has noted, in this specific

situation, that powder dealers responsible for less than 25 grams receive an average sentence

of 13.6 months, while crack dealers responsible for an equivalent amount receive average

sentences of 64.8 months.

Second, the crack guideline treats all such offenders as if they had engaged in harmful

conduct, when usually that is not the case.  In the present case, defendant did possess a

firearm, and the security monitors raised some concerns.  However, there was no evidence of

actual violence or threats, or specific harmful effects on the area.  He also did not have a

recent history of violence.  Third, defendant was a user, who apparently dealt as means of

supplementing his disability income in order to help support his family.  I concluded that these

mitigating factors warranted some consideration.

However, I also had to consider the aggravating factors present in the case.  Defendant

had a prior drug distribution case, for which he was sentenced to 18 months in prison in 2003.

He was released from that sentence in 2005 and committed the instant offenses just one year

later.[2]  Further, the firearm and security monitors defendant possessed caused me some

---

[2]As a result, the state revoked his extended supervision and required him to serve an
additional 27 months in prison, which sentence he was serving at the time he appeared before
me.

10

concern. Defendant had received social security disability for his head injuries for many years, yet his disabilities did not prevent him from setting up a not unsophisticated operation.

Thus, while some consideration of the effect of the 100:1 ratio was warranted, I could not conclude that defendant's proposed 48 month sentence was sufficient. First, although I agreed that an eight-plus year sentence was not needed to promote respect for the law, given the small amount involved, this was nonetheless a serious crime which required more than four years to provide just punishment. 18 U.S.C. § 3553(a)(2)(A). Second, as indicated, lesser sanctions had not deterred defendant. He just finished an 18 month sentence for dealing prior to committing the instant offenses. 18 U.S.C. § 3553(a)(2)(B). Third, given his extensive record, a substantial prison term was needed to protect the public. 18 U.S.C. § 3553(a)(2)(C). Defendant noted that he was forty-eight years old, at the point where recidivism tends to decline. But defendant had not slowed down, despite the general trends.

### III. CONCLUSION

Under all of the circumstances, I found a sentence of 78 months sufficient but not greater than necessary. This sentence accounted for the mitigating factors discussed, while still providing sufficient punishment. Because the sentence was four times longer than defendant's most recent sentence, it was sufficient to deter him from re-offending. Because the sentence varied from the range by only about 2 levels and was based on the particular facts of the case, it did not create unwarranted disparity.[3]

The final issue was whether to run the sentence concurrently or consecutively to his state sentence after revocation, which was determinate and set to discharge in August 2008.

---

[3]As the government noted, the firearm count standing alone supported a range of 77-96 months, and none of the problems with the crack guideline affected that range.

11

I had discretion on this issue under 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3(c), although the guidelines recommended a consecutive term, U.S.S.G. § 5G1.3 cmt. n.3(C). I noted that defendant had already served over a year on the state sentence, and the instant sentence would extend well beyond it, even if run concurrently. Consistent with the joint recommendation of the parties, I found that running the instant sentence concurrently produced a reasonable total punishment, one sufficient to satisfy the purposes of sentencing.

Therefore, I committed defendant to the custody of the Bureau of Prisons for 78 months on both counts to run concurrently with each other and with the undischarged state sentence. Upon release, I ordered him to serve a three year supervision term, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 13th day of June, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

12